UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. 4:06CR00266 SNL (AGF) |
| JULIUS RUTHERFORD, | ) | |
| | ) | |
| Defendant. | ) | |


**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on the pretrial motions filed by Defendant, Julius

Rutherford.  Pretrial matters were referred to the undersigned United States Magistrate

Judge under 28 U.S.C. § 636(b).  Defendant filed a motion to suppress evidence and a

motion to suppress statements.  (Doc. Nos. 21 & 22).  An evidentiary hearing was held on

May 8, 2007.  The government was represented by Assistant United States Attorney

Thomas J. Mehan.  Defendant was present and represented by his attorney, John M.

Lynch.  At the hearing, the government presented the testimony of Detective Andria Van

Mierlo, who has been employed with the St. Louis County Police Department (SLCPD)

for approximately seven years, and has been assigned to the Bureau of Drug Enforcement

for the past three years.  The witness was cross-examined extensively by defense counsel.

Trial is scheduled for June 25, 2007.  Based on the testimony and evidence adduced and

having had an opportunity to observe the demeanor and evaluate the credibility of the

witness, the undersigned makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Defendant is charged by indictment with knowingly and intentionally possessing with intent to distribute in excess of five hundred (500) grams of cocaine, in violation of 21 U.S.C. § 841(b)(1)(B)(iii), arising out of an arrest on January 30, 2006. On that date, law enforcement officers searched a residence at 4244 Casa Brazilia, Apt. C (the "Casa Brazilia Apt."), two times. The Casa Brizilia Apt. is leased by two individuals, Calvin Watson and Stephen Rutherford.[1] Defendant was not present during the first search, but was present during the second. Det. Van Mierlo and others then participated in a search of Defendant's residence at 1179 Jamunda Walk Apt. A (the "Jamunda Apt."). After locating cash and marijuana, Defendant was placed under arrest and transported to the precinct station, where Defendant gave a recorded statement.

<u>The March 2005 Incident</u>

The incident on January 30, 2006, was not Det. Van Mierlo's first encounter with Defendant pertaining to these two residences. Approximately ten months earlier, on March 24, 2005, Det. Van Mierlo received information from a confidential informant ("CI") pertaining to Defendant Rutherford. The CI agreed to attempt to purchase one ounce of cocaine from Defendant, in a controlled and monitored transaction. The CI met with Defendant at the Casa Brazilia Apt. and arranged the purchase. Defendant then left

---

[1] Counsel represented that Stephen Rutherford is Defendant's brother.

2

to get the cocaine, and went to his apartment (the Jamunda Apt.), which is in the same apartment complex, approximately one and one-half blocks away.

Officers, including Det. Van Mierlo, confronted Defendant as he came out of the Jamunda Apt., and seized a bag of cocaine from Defendant's person, which he was presumably intending to deliver to the CI. Defendant was placed under arrest, and Det. Van Mierlo advised Defendant of his rights under <u>Miranda</u>. Det. Van Mierlo requested consent to search the Jamunda Apt., as well as Defendant's vehicle, and Defendant agreed. Det. Van Mierlo accompanied Defendant to his apartment, at which time Defendant reviewed and signed a written consent to search form. Govt. Ex. A. No threats or promises were made to induce Defendant's consent. During the search of the Jamunda Apt. the officers found $9,000 in cash, and they found marijuana in Defendant's vehicle.

Defendant was transported to the 4th Precinct, and at that time gave a written statement. Prior to giving his written statement, Det. Van Mierlo again advised Defendant of his <u>Miranda</u> rights using a written warning and waiver form. Defendant was able to read the form while Det. Van Mierlo read the rights to him from the form. Defendant initialed each of the rights and signed the waiver. <u>Id.</u> Defendant thereafter gave a written statement, using a written form. The written form again advised Defendant of his rights and of the fact that he did not have to make any statement at all. <u>Id.</u> In his statement, Defendant admitted that he was on his way to sell the cocaine seized from him, and that the cash in his apartment was from sales of cocaine. <u>Id.</u> Det. Van Mierlo asked

Defendant if he wished to cooperate and to identify his source, but Defendant declined. After he was booked and gave his statement, Defendant was released. At some point during the March 24 incident, officers interviewed Calvin Watson, the lessee of the Casa Brazilia Apt., and Watson implicated Defendant and discussed their narcotics trafficking together.

### The January 2006 Incident

On or about January 30, 2006, Sergeant Hoots of the SLCPD conducted a traffic stop of Calvin Watson outside of the Casa Brazilia Apt. Watson was thereafter arrested and gave consent to search the Casa Brazilia Apt. At the time, Defendant was not present. During the search, officers located 888 grams of cocaine in lock box in Watson's bedroom closet, which was seized. In the kitchen, the officers also located cash, a scale, and clear plastic baggies. Det. Van Mierlo was contacted, and she came to intake and interviewed Watson. Watson again implicated Defendant in connection with the cocaine seized from the apartment, stating that Defendant was the only person he knew who had access to that much cocaine.

After Watson's arrest and interview, Det. Van Mierlo went to the Jamunda Apt. to look for Defendant, but did not find him there. She then returned to the Casa Brazilia Apt. and knocked on the door. Defendant answered, opened the door, and after seeing Det. Van Mierlo stepped back, implying that she could enter. Det. Van Mierlo understood from his actions that he was permitting her to enter the apartment. No one

other than Defendant was in the apartment at the time.[2]

Det. Van Mierlo advised Defendant why she was there, and asked Defendant if he remembered her from the March incident, and he said "yes." At this point, Det. Van Mierlo had not made any physical contact with Defendant and he was not restrained in any fashion. Det. Van Mierlo asked Defendant if he had brought anything into the Casa Brazilia Apt. since it had been searched, and Defendant said he had not. She asked if they could search the Casa Brazilia Apt. to confirm that, and Defendant said yes. Det. Van Mierlo did not have any consent to search forms with her, and did not have Defendant sign a written consent. A canine officer and approximately four other officers assisted with the search. During the search Defendant was placed in handcuffs for officer safety. Det. Van Mierlo did not consider that Defendant was under arrest. No further narcotics were discovered and nothing further was seized from the Casa Brazilia Apt.

Det. Van Mierlo asked Defendant if he had anything at the Jamunda Apt., and Defendant said he had $5,000 and a little marijuana. She asked if they could go over there and retrieve it, and Defendant said yes. Defendant was totally cooperative in his manner. Det. Van Mierlo took Defendant to his Jamunda Apt. She was unsure whether they walked or drove, but believed Defendant was in handcuffs while he was being

---

[2] Det. Van Mierlo believed that Stephen Rutherford was in drug treatment at the time and, as stated above, Watson had been arrested.

transported.[3]  The officers used Defendant's keys to open the door, and searched the

apartment and Defendant's car for the items discussed.  The officers located some

marijuana and $5,000 in currency, which was seized.  After locating the marijuana,

Defendant was placed under arrest and transported to the 4th Precinct.

At the Precinct, Defendant gave an oral statement, which was tape recorded.   Det.

Van Mierlo did not recall whether she specifically advised Defendant that the interview

was being tape recorded, but her tape recorder would have been on the table in clear

view.  The interview took place promptly after Defendant was booked, at approximately

6:22 p.m.  It was conducted in an interview room, with Det. Van Mierlo and Defendant

seated at a table, and there were no other officers present.  Det. Van Mierlo was not sure

whether Defendant had one hand cuffed to the table during the interview, but it is not her

normal practice have suspects cuffed during interviews.  Prior to conducting the

interview, Det. Van Mierlo advised Defendant of his rights using a written warning and

waiver form.  No promises or threats were made to induce Defendant to waive his rights.

Det. Van Mierlo did advise Defendant of the nature of the charges he could be facing,

including federal charges for conspiracy.  Defendant did not appear to be under the

---

[3]  It possible from the testimony that Defendant's handcuffs were removed
following the search at Casa Brazilia, and then put on again for transport to his own
apartment.  Det. Van Mierlo at one point testified that Defendant was not in handcuffs
when she asked for consent to search his apartment, but this was prior to having her
memory refreshed on cross-examination.  In light of the testimony overall, and given the
government's burden, the Court finds for purposes of this motion that Defendant was still
in handcuffs when consent to search the Jamunda Apt. was requested and during his
transport to that apartment.

influence of drugs or alcohol, and appeared to understand what was being said to him.

Defendant placed his initials alongside each of his rights, and then signed the form.

Above Defendant's signature, the form states:

> I have read the above statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

Govt. Ex. B. After the interview, which lasted approximately 30-45 minutes, Defendant was released from custody.

## CONCLUSIONS OF LAW

### A.  Search of the Casa Brazilia Apt.

Defendant challenges the search of both apartments on January 30, 2006, asserting that the officers had no authority to enter either apartment and that any purported consent was improperly obtained. The Court rejects Defendant's argument, and finds that the officers had consent to search the apartments.

In the context of a warrantless search, it is the prosecution's burden to prove by a preponderance of the evidence that a consent to search was freely given. United States v. White, 81 F.3d 775, 780 (8th Cir. 1996); United States v. Miller, 20 F.3d 926, 930 (8th Cir. 1994). The consent, however, need not necessarily be knowing and intelligent. Schneckloth v. Bustamonte, 412 U.S. 218, 241 (1973). One need not be aware of his or her right to consent in order to make the consent voluntary. United States v. Chaidez, 906 F.2d 377, 380 (8th Cir. 1990).

A consent is voluntary if it is the product of free choice, the defendant's will is not overborne, and the consent is not given under coercion or duress.  In determining whether the prosecution has met its burden, courts look to both the characteristics of the accused and the details of the environment in which the consent was given.  Chaidez, 906 F.2d at 381.  Voluntariness is a fact question to be determined from the totality of the circumstances present.  Schneckloth, 412 U.S. at 226-227; United States v. Matlock, 415 U.S. 164 (1964).  The factors to be considered in determining whether consent is voluntary include:

> (1) the defendant's age; (2) the defendant's general intelligence and education; (3) whether the defendant was under the influence of drugs or alcohol; (4) whether the defendant was informed of his Miranda rights prior to the consent; and (5) whether the defendant had experienced prior arrests so that he was aware of the protections the legal system affords to suspected criminals.

United States v. Alcantar, 271 F.3d 731, 737 (8th Cir. 2001); accord United States v. Hathcock, 103 F.3d 715, 719-20 (8th Cir. 1997); Chaidez, 906 F.2d at 381.  Among the factors to be considered in examining the environment surrounding the consent, courts examine:  the length of time a person is detained and questioned; whether the person was threatened, physically intimidated, or punished by the police; whether the defendant relied upon promises or misrepresentations made by the police; whether the defendant was in custody; whether the consent occurred in a public or secluded location; and whether the defendant objected to the search or stood silently by while the search occurred.  United States v. Smith, 260 F.3d 922, 924 (8th Cir. 2001); Chaidez at 381.

The foregoing factors are not to be applied mechanically, and no single factor is dispositive. Schneckloth, 412 U.S. at 226-27; Chaidez, at 381.

It is unclear whether Defendant is seeking to suppress any evidence seized during the first search of the Casa Brazilia Apt., but Defendant has no basis to do so. He was not the lessee of the apartment, was not present at the time, is not challenging the authority of Watson to consent to the search, and has asserted no legal or factual basis to challenge the voluntariness of Watson's consent to search. As such, any challenge by Defendant must be limited to the second search of the Casa Brazilia Apt. Although the officers did not seize any evidence as a result of the second search, the Court will nonetheless assess the propriety of that search.[4]

1. Entry into the Apartment

Addressing first the entry itself, the Court finds both that Defendant voluntarily consented to Det. Van Mierlo's entry into the apartment, and that in any event she reasonably understood Defendant to be providing consent to enter. There was no show of

---

[4] The Court will assume for purposes of this motion that Defendant possesses a sufficient privacy interest in the Casa Brazilia Apt. to contest its search. But see Minnesota v. Carter, 525 U.S. 83, 90 (1998) (neither individuals who visit the home of another without spending the night nor individuals who visit the apartment of another to package cocaine, possess a sufficient privacy interest to raise Fourth Amendment interests); United States v. Sturgis, 238 F.3d 956, 958-59 (8th Cir. 2001) (defendant who visited motel room of another to engage in distributing controlled substances lacked reasonable expectation of privacy to trigger Fourth Amendment). Moreover, Defendant lacks standing to assert any alleged violation of the rights of the actual lessees. See United States v. Rodriguez-Arreola, 270 F.3d 611, 616 (8th Cir. 2001) (challenged conduct must invade the defendant's legitimate expectation of privacy rather than that of third party).

force by Det. Van Mierlo.  She simply knocked on the door during the daylight hours and Defendant, who knew her from their prior interaction, stood back from the door and permitted her to enter.  On these facts, it was also reasonable for Det. Van Mierlo to understand that Defendant was allowing her to enter.  See, e.g., United States v. Carter, 378 F.3d 584, 588 (6th Cir. 2004) (holding officers reasonably understood they had consent to enter where defendant, after being asked if they could enter, moved away from the door and backed up), cert. denied, 543 U.S. 1155 (2005); United States v. Ramirez-Chilel, 289 F.3d 744, 748, 752 (finding officers properly interpreted actions as consent to enter where defendant opened door and stepped aside, even though search occurred at midnight); accord United States v. Hampton, 260 F.3d 832, 833, 835 (8th Cir. 2001) (consent to enter found where defendant told police his identification was inside and held door open to admit them).

    2.  Consent to Search

The Court also finds that the government has met its burden to demonstrate that after permitting Det. Van Mierlo to enter the Casa Brazilia Apt., he voluntarily gave consent to search the apartment.  Applying the above factors, there is nothing to suggest that Defendant's will was overborne.  See United States v. Poulack, 236 F.3d 932, 936 (8th Cir. 2001); Miller, 20 F.3d at 930.  At the time of the incident, Defendant was 31 years old.  He did not appear to be under the influence of any drugs or narcotics, appeared to understand what was being said, and provided responsive answers.  The Court further notes that only minutes had passed from the time Det. Van Mierlo first

entered the apartment and consent to search was requested.  No threats or promises were made to induce Defendant to consent, and there is no evidence that any officers displayed their firearms or exerted any force whatsoever.

While Defendant was not advised of his rights under Miranda prior to requesting consent to search, there was no requirement to do so.  See United States v. Vera, 457 F.3d 831, 835 (8th Cir. 2006) (recognizing there is no requirement that officer inform citizen of right to refuse consent, and no presumption that consent is invalid where given without explicit notification of right to refuse to consent), cert. denied, 127 S.Ct. 1305 (2007);  United States v. Montano-Gudino, 309 F.3d 501, 504 (8th Cir. 2002) (same); United States v. Payne, 119 F.3d 637, 643-44 (8th Cir. 1997) ("We have never held that a request to search must be preceded by Miranda warnings or that a lack of Miranda warnings invalidates a consent to search.").  Given the language used to request the consent, Defendant's right to refuse would have been clear.  Moreover, Defendant was aware of his rights, including his right to refuse to consent to a search, from his dealings with this very same detective just ten months prior, at which time Defendant reviewed and signed a written consent to search that advised him of his rights, including his right to refuse to consent to a search.  See United States v. Becker, 333 F.3d 858, 861 (8th Cir. 2003) (finding important fact that defendant was aware of his rights based on his prior experience with law enforcement); United States v. Bradley, 234 F.3d 363, 366 (8th Cir. 2000) (noting importance of fact that defendant "had been arrested on a prior occasion and presumably knew his legal rights").  As such, from all of the circumstances, the Court

finds that Defendant voluntarily consented to the second search of the Casa Brazilia Apt.

   3.  Restraint of Defendant During the Search

   Defendant asserts in his written motion that the officers did not have any basis to restrain Defendant during the course of the consent search, asserting specifically that the officers lacked "articulable suspicion."  The Court disagrees.  The law has long recognized the right of officers to detain and handcuff occupants for officer safety and to preserve evidence during the execution of a search warrant.  Muehler v. Mena, 544 U.S. 93, 99-101 (2005); Michigan v. Summers, 452 U.S. 692, 705 (1981).  The Ninth Circuit has applied this same principle to a consent search.  See United States v. Enslin, 327 F.3d 788, 796-97 (9th Cir.)(applying reasonableness standard), cert. denied, 540 U.S. 917 (2003).  While the search here was conducted pursuant to consent, rather than a warrant, the Court finds that under all of the circumstances the officers had a reasonable basis for detaining Defendant while they conducted a consent search to satisfy their reasonable suspicions that he was then engaged in cocaine trafficking.

   The law is clear that police officers may briefly detain an individual for an investigative purpose when they have a reasonable belief that "criminal activity may be afoot."  Terry v. Ohio, 392 U.S. 1, 30 (1968).   The reasonable belief requires suspicion based on "'particularized, objective facts which, when taken together with rational inferences from those facts, reasonably warrant[] suspicion that a crime [is] being committed.'"  United States v. Beck, 140 F.3d 1129, 1136 (8th Cir. 1998) (quoting United States v. Martin, 706 F.2d 263, 265 (8th Cir. 1983)).  The reasonable suspicion is

assessed in light of the totality of the circumstances, taking into consideration the officers' experience.  United States v. Pereira-Munoz, 59 F.3d 788, 791 (8th Cir. 1995).

> The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. . . .  [A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop.  Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time.

Florida v. Royer, 460 U.S. 491, 500 (1983)..

Here the officers had more than reasonable suspicion that Defendant was engaged in criminal activity.  Defendant came to an apartment where the police had recently located a large quantity of cocaine and other items associated with drug trafficking, and the lessee of the apartment advised the police that he believed the cocaine must be Defendant's.  It was also the same apartment at which Defendant had agreed to a sale of cocaine earlier that year.  See United States v. Bustos-Torres, 396 F.3d 935, 942-43 (8th Cir.), cert. denied, 545 U.S. 1109 (2005) (reasonable suspicion for Terry stop where officers, in area known for drug activity, saw individual entering defendant's car after same individual had been seen conducting probable drug transaction with another car a few minutes earlier); United States v. Spotts, 275 F.3d 714, 718, 720 (8th Cir. 2002) (reasonable suspicion to stop defendant and ask him to get out of truck where truck had been seen driving by residence police were searching for methamphetamine lab and the officers had intelligence reports that the defendant dealt methamphetamine); United States v. Gonzalez, 220 F.3d 922, 925 (8th Cir. 2000) (reasonable suspicion of drug

transport based on accomplice's information, including particulars of vehicle and direction of travel). The courts have also recognized that it is reasonable for officers to suspect weapons may be involved with drug trafficking. See Bustos-Torres, 396 F.3d at 943 ("Because weapons and violence are frequently associated with drug transactions, it is reasonable for an officer to believe a person may be armed and dangerous when the person is suspected of being involved in a drug transaction."); United States v. Robinson, 119 F.3d 663, 667 (8th Cir. 1997) (same).

As such, it was objectively reasonable for the officers to place Defendant in handcuffs to protect their own safety and preserve the status-quo while they conducted a consent search of the residence. See Enslin, 327 F.3d at 796-97 (applying reasonableness test to seizure of person during consent search); see also United States v. Maltais, 403 F.3d 550, 556 (8th Cir. 2005) (reasonable to detain defendant in patrol car until assistance could arrive to complete investigation), cert. denied, 126 S.Ct. 1345 (2006); United States v. Hamlin, 319 F.3d 666, 671-72 (4th Cir. 2003) (use of handcuffs did not convert Terry stop into custodial arrest); United States v. Ramires, 307 F.3d 713, 716 (8th 2002) (reasonable to handcuff and detain suspects in narcotics investigation while secured apartment); see also United States v. Martinez, 462 F.3d 903, 907-08 (8th Cir. 2006) (Terry stop not exceeded where suspect placed in patrol car, handcuffed, and transported back to bank for identification), cert. denied, 127 S.Ct. 1502 (2007).

Given that Defendant plainly had independent access to both apartments and had used both apartments in connection with his drug trafficking ten months earlier, it was

also reasonable, and did not exceed the scope of the investigatory detention, for the officers to ask Defendant if he had anything at his own apartment and to request consent to retrieve the items he identified. See United States v. Blaylock, 421 F.3d 758, 769 (8th Cir. 2005) (passenger's extreme nervousness, combined with presence of masking odors, contradictory statements, and driver's vague reasons for trip, provided reasonable cause to detain vehicle for canine search), cert. denied, 126 S.Ct. 1108 (2006); Montano-Gudino, 309 F.3d at 503-04 (reasonable to detain defendant, escort him to storage facility, and request consent to search when he attempted to remove contents from locked storage unit from which police had seized large quantity of methamphetamine a few days earlier); see also United States v. Yang, 345 F.3d 650, 654 (8th Cir. 2003) ("the time it takes for an officer to find out if consent will be given cannot be an unlawful detention in the absence of coercive or otherwise unusual circumstances"), cert. denied, 541 U.S. 952 (2004). And though they did not arrest him at that time, once Defendant admitted that he had marijuana and cash in his apartment, the officers unquestionably had probable cause to arrest him.

### B.  Search of the Jamunda Apt.

For the same reasons as set forth above, the Court finds that Defendant voluntarily consented to the search of the Jamunda Apt. As discussed above, at the time Defendant was an adult with prior experience with law enforcement who was knowledgeable about his right to refuse to consent. He did not appear to be intoxicated or under the influence of narcotics, appeared to understand what was being asked of him, and no threats or

promises were made to induce Defendant's consent to search.  The Court also notes that in his prior dealings with this very same officer, Defendant had been released after he gave his written statement, and his manner in dealing with Det. Van Mierlo in January 2006 was cooperative.

The Court notes that when Det. Van Mierlo requested consent to search the Jamunta Apt., unlike when she requested consent to search the Casa Brazilia Apt., Defendant was now in handcuffs.  The Court finds, though, that under all of the circumstances Defendant's detention is not enough to outweigh the factors, discussed above, that all weigh in favor of finding the consent to search was voluntary.  See United States v. Perry, 437 F.3d 782, 785 (8th Cir. 2006) (finding consent to search voluntary though defendant had been arrested and police did not recite Miranda rights before requesting consent); Montano-Gudino, 309 F.3d at 504 (finding consent to search voluntary though defendant detained in small room with three armed police officers and defendant not advised that he did not have to consent); United States v. Burns, 298 F.3d 523, 541 (6th Cir. 2002) (defendant's consent not invalidated simply because he was in custody and had been arrested at the time he gave it) (citing United States v. Watson, 423 U.S. 411, 424 (1976)); United States v. Trueber, 238 F.3d 79, 95 (1st Cir. 2001) ("custody alone has never been enough in itself to demonstrate . . . coerced . . . consent to search") (quoting United States v. Collazo-Aponte, 216 F.3d 163, 187 (1st Cir. 2000)).

### C. **Statements Made by Defendant**

1. Pre-Arrest Statements

Defendant asserts, generically, that the statements made by him should be suppressed, in part, because Defendant was not advised of his rights under Miranda v. Arizona, 384 U.S. 436, 479 (1966).[5]   "[T]he safeguard prescribed by Miranda become applicable as soon as a suspect's freedom of action is curtailed to a degree associated with formal arrest."  Berkemer v. McCarty, 468 U.S. 420, 440 (1984); accord United States v. LeBrun, 363 F.3d 715, 720 (8th Cir. 2004).  The determination of whether the suspect's freedom was curtailed to a degree associated with arrest is based on the totality of the circumstances, and is "based on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned."  LeBrun, 363 F.3d at 720; see also United States v. Galceran, 301 F.3d 927, 929 (8th Cir. 2002) (listing common indicia of custody).

The encounter with Defendant began as a wholly consensual one, and Defendant's freedom was not curtailed in any respect.  As such, Det. Van Mierlo was not required to advise Defendant of his Miranda rights before requesting whether he had brought anything into the apartment and requesting consent to search.  Moreover, the case law recognizes that officers are not required to advise a defendant of his  Miranda rights prior

---

[5]  Defendant filed a form motion, that essentially asserts all possible grounds for the suppression of a statement, most of which appear to have no application to the facts in this case.

to requesting a consent to search.  See United States v. LaGrone, 43 F.3d 332, 335 (7th Cir. 1994) (request for consent to search is not interrogation for which Miranda warnings would be required, as request not likely to elicit incriminating statement); United States v. Rodriguez-Garcia, 983 F.2d 1563, 1568 (10th Cir. 1993) ("[e]very federal circuit court which has addressed the Miranda issue presented here has reached the same conclusion that a consent to search is not an incriminating statement"); Cody v. Solem, 755 F.3d 1323, 1330 (8th Cir. 1985) (same).

Thereafter Defendant was placed in handcuffs, for officer safety, during the consent search, and the Court assumes that his handcuffs were still on when Det. Van Mierlo asked whether Defendant had anything in his apartment.  Though analyzed as a Terry detention by the undersigned, the case law recognizes that "most Terry stops do not trigger the detainee's Miranda rights."  United States v. Pelayo-Ruelas, 345 F.3d 589, 592 (8th Cir. 2003).  The question remains the same, namely, whether Defendant's freedom was curtailed to the degree associated with a formal arrest.

The mere fact that a suspect is placed in handcuffs and subjected to brief questioning during the course of a Terry detention does not, alone, trigger the necessity of Miranda warnings.  See United States v. Cervantes-Flores, 421 F.3d 825, 829-30 (9th Cir. 2005) (Miranda warnings not required where officer used handcuffs to subdue defendant during Terry stop), cert. denied, 126 S.Ct. 1911 (2006); United States v. Fornia-Castillo, 408 F.3d 52, 63-65 (1st Cir. 2005) (finding Miranda warnings not required where officer briefly drew pistol and subsequently placed defendant in handcuffs during Terry stop and

consent search); see also United States v. Hernandez-Hernandez, 327 F.3d 703, 705 (8th Cir. 2003) (interrogation not custodial though defendant had been patted down and was directed to take a seat during consensual search of residence); United States v. Miller, 974 F.2d 953, 956-57 (8th Cir. 1992). The Eighth Circuit did find that Miranda warnings were required during the course of a Terry stop in Martinez, 462 F.3d at 909-10. This case is not like Martinez, however. In that case, Martinez was stopped by two police officers on the street, detained, patted down for weapons, closely questioned about his possession of weapons, then handcuffed and told he was being further detained, all before being questioned by the two officers. Id. at 909.

Here, the conversation took place in an apartment Defendant apparently used or to which he had free access. He voluntarily admitted Det. Van Mierlo into the apartment, and was only placed in handcuffs for officer safety once the officers began the consensual search, and not before. No drugs or other contraband, such as might otherwise cause one in Defendant's position to feel the circumstances of the encounter had changed, were located during the search of the Casa Brazilia Apt. Only very brief questioning, specifically related to the purpose of the Terry stop, occurred either before or after Defendant was placed in handcuffs. Defendant's consent for a further search was merely requested, with no suggestion that he lacked the ability to refuse consent, and at this time the conversation remained cordial and Defendant's manner remained fully cooperative. No strong-arm tactics were used. Also important to the inquiry is the fact that Defendant had prior dealings with Det. Van Mierlo, and in connection with the prior encounter,

Defendant was released from custody after questioning. Based on all of these facts and circumstances, the Court finds that Defendant was not "in custody" for purposes of Miranda when Det. Van Mierlo asked whether he had anything in his apartment and whether they could go there to retrieve the items identified by him. See Pelayo-Ruelas, 345 F.3d at 593 (holding that where defendant was removed from car and patted down in connection with drug investigation, Miranda warnings were not required); Rodriguez-Arreola, 270 F.3d at 617.

    2. Post-Arrest Statements

Defendant also made a recorded statement at the precinct, at a time when he was clearly in custody. When the prosecution seeks to introduce in evidence a statement made by a defendant while in custody, it has the burden of showing by a preponderance of the evidence that the statement was made after a voluntary, knowing, and intelligent waiver of Miranda rights by the defendant. Colorado v. Connelly, 479 U.S. 157 (1986). The court must examine the totality of the circumstances surrounding the interrogation to determine whether the waiver was the product of a free and deliberate choice, rather than intimidation, coercion, or deception, and whether the waiver was made with an awareness of the right being abandoned and the consequences of the decision to abandon it. Moran v. Burbine, 475 U.S. 412 (1986). The statement must be voluntary and not the product of any police conduct by which the defendant's will is overborne. Connelly, 479 U.S. at 170; Haynes v. Washington, 373 U.S. 503 (1963). "The requirement that Miranda warnings be given does not, of course, dispense with the voluntariness inquiry."

Dickerson v. United States, 530 U.S. 428, 444 (2000). As the Supreme Court has recognized, however, "[c]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that law enforcement authorities adhered to the dictates of Miranda, are rare." Berkemer v. McCarty, 468 U.S. 420, 433 n.20 (1984). See Dickerson, 530 U.S. at 444.

Prior to his questioning at the station, Defendant was advised of his rights under Miranda, both orally and in writing. Defendant acknowledged that he understood his rights, specifically initialed each right, and then signed a written waiver. The interview that followed took place shortly after Defendant's arrest and was conducted by a single officer, with both Defendant and the officer seated at a table. Defendant likely was not restrained in any fashion, or at most had one hand cuffed to the table. As set forth above, Defendant is an adult who did not appear to be under the influence of any drugs or alcohol, or to be impaired in any other manner. No promises or threats were made to induce Defendant's waiver or his statements, a fact acknowledged by him in signing the written waiver, and the interview itself lasted only only 30-45 minutes. Based on the totality of the circumstances, the Court finds Defendant knowingly and voluntarily waived his rights in connection with his recorded statement.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence [Doc. No. 21] be **Denied**.

**IT IS FURTHER RECOMMENDED** that Defendant's Motion to Suppress Statements [Doc. No. 22] be **Denied**.

The parties are advised that they have eleven (11) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. <u>See</u> <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir.1990).

AUDREY G. FLEISSIG
United States Magistrate Judge

Dated this 21st day of May, 2007.